Tammie S. **WALKER** [1], Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 01–60236.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 2003.

---

**1.** Robert H. Walker is the claimant in this case. He died in March, 2002, of pancreatic cancer. The parties have stipulated to substitute his widow, Tammie S. Walker, for Robert H. Walker.

Lewis M. Seward, Bay City, MI, for Plaintiff.

Vanessa M. Mays, Atty, for Defendants.

## OPINION AND ORDER OF THE COURT ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE'S REPORT AND RECOMMENDATION AND REMANDING CASE FOR FURTHER REVIEW

BATTANI, District Judge.

### I. INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to challenge the final decision of the Commissioner denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423. Plaintiff filed a

claim for DIB on August 19, 1997, alleging disability since December 1, 1988, due to difficulties sitting, standing and walking, using his right hand, pain in the left shoulder and hip, headaches, and inability to concentrate.[2] Plaintiff's claim was denied initially and upon reconsideration.

On June 7, 1999, a hearing was held before Administrative Law Judge Paula M. Zera, Jr. (ALJ). The ALJ considered the medical evidence, and heard testimony from Plaintiff, Vocational Expert Michelle Ross ("VE"), and Medical Expert Jeffrey Ander, M.D. ("ME").

In a decision dated October 25, 1999, the ALJ affirmed the denial of DIB to Plaintiff, finding that Plaintiff was not disabled since he could perform a limited range of unskilled, sedentary work in the national economy. The Appeals Council subsequently declined review, and Plaintiff filed a Motion to Remand with the Court. Thereafter, Defendant filed a Motion for Summary Judgment.

In a Report and Recommendation (R & R) issued on March 5, 2003, Magistrate Judge Wallace Capel, Jr. denied Plaintiff's Motion to Remand and granted Defendant's Motion for Summary Judgment on the grounds that substantial evidence supported the ALJ's finding that Plaintiff was not disabled. Subsequently, on March 20, 2003, Plaintiff filed objections to the R & R, which are now before the Court.

In his objections, Plaintiff first argues that the ALJ improperly reopened his 1985 DIB application when she used medical evidence from the prior claim to fashion Plaintiff's current residual functional capacity ("RFC"). Second, Plaintiff asserts that the ALJ failed to give controlling weight to certain medical reports from his treating physician, Randall Sturm, M.D. Finally, Plaintiff contends that the ALJ failed to instruct the VE that Plaintiff had a severe mental impairment of adjustment disorder with depressed mood. For the reasons stated below, the Court adopts in part and rejects in part the magistrate's R & R.

## II. STANDARD OF REVIEW

 This court has jurisdiction to review a final decision by the Commissioner pursuant to 42 U.S.C.A. § 405(g). In cases where a magistrate judge has submitted a Report and Recommendation and a party has properly filed objections to it, the district court must conduct a de novo review of those parts of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1).[3] Review of the Commissioner's decision is limited to determining whether the findings are supported by substantial evidence and whether the Commissioner employed proper legal standards in reaching his conclusion. *Brainard v. Sec'y of Health and Human Svcs*, 889 F.2d 679, 681 (6th Cir.1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1233 (6th Cir.1993). A decision which is supported by substantial evidence is not subject to reversal, even if the reviewing

---

**2.** Prior to this application for DIB, Plaintiff had filed another DIB claim on March 5, 1985, alleging disability since September 5, 1984 due to injuries sustained from a motorcycle accident.

**3.** "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions."

court might arrive at a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotation omitted); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983).

▆▆▆ When determining whether the decision is supported by substantial evidence, the court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight." *Mullen,* 800 F.2d at 545. The scope of review is limited to examination of the record. *Brainard,* 889 F.2d at 681. Further, where the Appeals Council had declined to review the ALJ's decision, review is limited to the record and evidence before the ALJ. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). However, the court may not review the evidence de novo, make determinations of credibility or weigh the evidence. *Brainard,* 889 F.2d at 681. Credibility determinations by the ALJ should be accorded deference by the reviewing court. *Mullen,* 800 F.2d at 545 (internal quotation omitted).

## III. STATEMENT OF FACTS

The Court adopts the recitation of facts contained in the magistrate's R & R, but highlights the following specific portions of the record.

### 1. Medical Record

Plaintiff was forty-four years old at the time his insured status expired. He has an eleventh grade education, and past relevant work experience as an electrician and building mechanic.

Plaintiff testified at the administrative hearing that he has been unable to work since 1988, due to injuries he sustained from a motorcycle accident in 1984. As noted above, after his accident, Plaintiff applied for and received disability benefits through October 1988, when they were discontinued.

In 1988, Plaintiff sought treatment from the Genessee Psychiatric Center ("GPC") after his first wife committed suicide. He was diagnosed with major depressive disorder, but was not prescribed any medication. He went to GPC on four other occasions through February, 1990, but did not seek psychological treatment again until 1996, over two years after the expiration of his insured status. At that time, Plaintiff was diagnosed with major depression.

Turning now to Plaintiff's physical condition, the record reflects that Plaintiff was examined by his treating physician, Dr. Sturm in February, 1991. Based upon that exam, Dr. Sturm indicated that aside from chronic headaches, which Plaintiff had for years, Plaintiff was doing quite well. Dr. Sturm examined Plaintiff again in June, 1991, and found that Plaintiff had been "doing well," and that his headaches had decreased. In November, 1991, Dr. Sturm opined that, overall, Plaintiff was "doing well." In fact, Dr. Sturm continued to examine Plaintiff until the expiration of his insured status, and consistently noted that Plaintiff was doing well and had no clinical abnormalities.

Dr. Sturm treated Plaintiff after December, 1993, and over the course of the next several years, his medical opinion seemed to change dramatically. For instance, in September 1997, Dr. Sturm opined that Plaintiff was "totally and permanently disabled" due to his joint stiffness, headaches and pain. In a letter to the state agency on February 6, 1998, Dr. Sturm noted that Plaintiff's disability originated with his motorcycle accident and lasted through the course of his insured status. Finally, in May, 1999, Dr. Sturm opined that Plaintiff was disabled due to chronic musculoskeletal pain, headaches and depression.

## 2. Administrative Hearing

At the administrative hearing, the ME testified that Plaintiff had an episode of adjustment disorder with depressed mood from August, 1988 to February, 1990. According to the ME, this disorder would have only slightly restricted Plaintiff's activities of daily living, but could have had a more significant impact on his social functioning and ability to concentrate. The ME further testified that Dr. Sturm's medical reports from 1991 and 1992, which indicated that Plaintiff was in "good spirits," were inconsistent with a continued depressive disorder beyond 1990.

Furthermore, the ALJ proposed a hypothetical question to the VE, and asked her to assume a hypothetical claimant of Plaintiff's age, educational background and past relevant work experience, who could perform a range of sedentary work, had a limited ability to move around, and needed a sit/stand option. The ALJ asked the VE if to identify any simple, unskilled jobs such an individual could perform. In response to the ALJ's question, the VE testified that, in her opinion, Plaintiff acquired skills from his work as an electrician that would transfer to other work at the sedentary or light exertional levels. In particular, the VE testified that Plaintiff could perform work as an electronic component tester, ticket seller and bench assembler.

## IV. DISCUSSION

In order to establish a compensable disability under the Social Security Act, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A). The claimant bears the ultimate burden of establishing a disability within the meaning of the Social Security Act. *Casey*, 987 F.2d at 1233.

Disability claims are evaluated through a five-step sequential process. 20 C.F.R. § 404.1520. *See also Kirk v. Sec'y of Health and Human Serv.*, 667 F.2d 524, 529 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315. 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The burden of proof to show a disability is on the claimant through the first four steps of the process. If a claimant meets this burden, the fifth step shifts the burden to the Commissioner. *Preslar v. Sec'y of Health and Human Serv.*, 14 F.3d 1107, 1110 (6th Cir.1994). The first step of the process examines whether the claimant is currently engaged in substantial gainful activity. If the claimant is so engaged, she is not disabled under the guidelines. The second step examines whether the claimant has a severe impairment which significantly limits her ability to perform work-related functions. *Id.* If a severe impairment is found, the third step requires comparison of the impairment to those impairments listed in Appendix I, 20 C.F.R. § 404, Subpt. P (1981), to determine if, on the medical evidence alone, the claimant is disabled. *Id.* If the claimant is not disabled under the third step, the fourth step requires. a determination of whether the claimant can perform relevant past work. If claimant cannot perform relevant past work, the fifth step shifts the burden to the Commissioner to establish that the claimant has transferable skills which enable her to perform other work in the national economy, *Id.*

Here, the ALJ found that Plaintiff was not disabled under step five of the disability analysis, because he could perform other work in the national economy. Plaintiff objects to this finding on the following three grounds. First, Plaintiff argues that

the magistrate improperly concluded that the ALJ did not constructively reopen Plaintiff's 1985 application for DIB. Essentially, Plaintiff takes issue with the ALJ's initial determination that res judicata barred the reopening of the 1985 claim, and subsequent consideration of various pieces of medical evidence from the record relating to that claim. Specifically, Plaintiff contends that the ALJ improperly discussed Plaintiff's RFC from the first claim to rationalize the RFC for the current claim.

■ "[W]here a claim has been reconsidered on the merits, it is properly treated as having been reopened as a matter of administrative discretion." *King v. Chater*, 90 F.3d 323, 325 (8th Cir.1996). This is known as a de facto or constructive reopening. *Id.* However, "[m]ere consideration of evidence from an earlier application is not considered a reopening of an earlier claim" *Id.*

■ The Court adopts the magistrate's extensive and thorough analysis of this issue, and finds that the ALJ did not reopen Plaintiff's 1985 application for DIB simply by discussing and considering medical evidence from that claim. In so holding, the Court reiterates the magistrate's conclusion that at no time did the ALJ reconsider the merits of Plaintiff's earlier claim by seeking to determine whether Plaintiff was actually disabled during the relevant time period for that claim. Rather, the ALJ specifically noted that res judicata barred her from reviewing Plaintiff's 1985 claim. Therefore, she considered only Plaintiff's disability status as to the unadjudicated time between December 1, 1988 and December 31, 1993, when Plaintiff's disability insurance expired.

Second, Plaintiff argues that the ALJ failed to give controlling weight to the medical opinions of his treating physician Dr. Sturm from 1997 to 1999. As discussed above, Dr. Sturm's reports from

that time period indicate that Plaintiff was totally and permanently disabled.

■ As a general rule, "in determining whether a claimant is entitled to disability insurance payments, medical opinions and diagnoses of treating physicians are entitled to great weight, and if uncontradicted, are entitled to complete deference." *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir.1992). However, the ultimate decision of disability rests with the ALJ, not the treating physician, *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6thCir.1984), and the Secretary is "not bound by the opinion of a treating physician where there is substantial evidence to the contrary." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1308 (6th Cir.1990) (citing *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048 (6th Cir.1983)).

In the present case, in deciding that Plaintiff was not disabled under step five of the disability analysis, the ALJ discounted a portion of the treating physician's medical opinion. In particular, the ALJ noted that Dr. Sturm's 1997–1999 post-insured notes, which indicated that Plaintiff was totally and permanently disabled, had to "be rejected since they [were] not well-supported by the objective and clinical evidence." In so doing, the ALJ stated that Dr. Sturm's office notes during the relevant insured period, from December, 1998 to December, 1993, which indicated that Plaintiff was not disabled, were a better measure of Plaintiff's actual physical condition during that time.

■ Plaintiff now objects to that finding on the grounds that, contrary to the magistrate's holding, Dr. Sturm's 1997–1999 opinions did contain objective data to allow the ALJ to evaluate the severity of the Plaintiff's medical condition. In particular, Plaintiff notes that Dr. Strum's

reports were detailed and specific with respect to Plaintiff's arthritis, and its effect on his ability to walk, grip strength, and ability to sit for long periods of time. The Court, however, adopts the magistrate's well-reasoned and well-developed R & R, and finds that substantial evidence exists in the record to support the ALJ's treatment of Dr. Sturm's medical reports from 1997 to 1999. In conducting her analysis, the ALJ found that those reports were contradicted not only by the greater weight of the medical evidence, but by Dr. Sturm's own medical opinion from an earlier, more relevant, time. That is, in a two-page summary, the ALJ deferred to Dr. Sturm's treatment notes during the insured period, from December, 1988 to December, 1993, which indicated that despite Plaintiff's medical impairments, he was not disabled. For the reasons stated more fully in the magistrate's R & R, the Court will not disturb the ALJ's analysis or conclusion.

Finally, Plaintiff objects on the basis that the ALJ failed to properly consider Plaintiff's mental impairment of adjustment disorder with depressed mood when determining his RFC and hypothetical. As discussed above, when questioning the VE, the ALJ limited the hypothetical claimant to unskilled, simple work but did not actually mention Plaintiff's mental condition. According to the magistrate, this "oversight" was insignificant, because the ALJ's instruction to the VE nevertheless sufficiently accommodated Plaintiff's memory and/or concentration deficits. According to Plaintiff, however, the ALJ's hypothetical and RFC did not accurately portray his overall physical and mental condition, because the "simple, unskilled work" instruction did not take into account the nonexertional limitations imposed by his "severe" mental impairment.

A claimant's RFC "is to be 'an assessment of his remaining capacity for work'

once [his] limitations have been taken into account." *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). "It is an assessment of what Plaintiff can and cannot do, not what [he] does and does not suffer from." *Id.* The hypothetical question, on the other hand. "should be a more complete assessment of her physical and mental state and should include an accurate[ ] portray[al] of [the claimant's] individual physical and mental impairments." *Id.* (quotations omitted). Thus, according to *Howard*, "while the RFC should focus on [the claimant's] abilities...the hypothetical question should focus on [the claimant's] overall state including [his] mental and physical maladies." *Id.*

 Given this, the Court finds that the ALJ's assessment of Plaintiff's RFC was not flawed simply because she did not specifically cite to Plaintiff's depressive disorder. The record indicates that the ALJ considered the relevant medical evidence and hearing testimony, including evidence pertaining to Plaintiff's depression, when determining what Plaintiff could and could not do. Adopting the ME's opinion, the ALJ specifically noted that Plaintiff's "condition of an adjustment disorder with depressed mood would not significantly compromise the claimant's ability to perform a range of sedentary work." The ALJ, therefore, found that Plaintiff had the "residual functional capacity to perform the physical exertional and non-exertional requirements" of certain limited work. The Court finds that this was an adequate assessment of Plaintiff's RFC, given his physical and mental limitations.

The Court now turns to the hypothetical question posed by the ALJ to the VE. First, the Court notes that in *Howard*, the Sixth Circuit found that the hypothetical question at issue did not accurately portray the claimant's medical condition, in

part, because the ALJ's RFC was flawed. That is, in that case, the Court held that because the ALJ overlooked several of the claimant's significant impairments, "the RFC failed to describe accurately [claimant's] *abilities* in several respects[; and,] since the hypothetical question is nearly identical, it suffers the same defects." *Id.* Here, however, as previously discussed, the record reflects that the ALJ properly fashioned Plaintiff's RFC based on the medical record in its entirety. In fact, the ALJ specifically considered Plaintiff's depressive disorder, and found that it did not significantly interfere with Plaintiff's ability to perform light, sedentary work. Therefore, the Court holds that this section of the Sixth Circuit's analysis is inapplicable to the facts in the present case.

Second, the Court notes that the Sixth Circuit in *Howard* additionally found that the ALJ's failure to describe the claimant's physical and mental impairments in the hypothetical question was fatal to the VE's testimony and the ALJ's reliance upon it. *Id.* This was so, the Court held, because the ALJ should have included the claimant's specific diagnoses from his relevant medical reports in his instructions to the VE. *Id.* Specifically, the Sixth Circuit took issue with the fact that the ALJ did not inform the VE of his finding that the claimant had a major depressive disorder; therefore, because the ALJ failed to do so, the VE's testimony in reliance on the hypothetical was not substantial evidence for the ALJ's conclusion that the claimant could perform "other work." *Id.* at 241.

██ In the present case, the magistrate first found that the ALJ's instruction to the VE that the hypothetical claimant could perform only simple, unskilled work accommodated Plaintiff's depressive disorder. The Court disagrees with this finding, and notes that this instruction did not necessarily take into account the non-exer-

tional limitations imposed on Plaintiff by his depressive disorder.

More importantly, though, the magistrate held that in the event that the ALJ's hypothetical was flawed by her failure to explicitly reference Plaintiff's mental disorder, her error was "inconsequential and/or harmless," because the ALJ's RFC assessment and hypothetical were virtually identical to Plaintiff's records of mental health treatment. To support this conclusion, the magistrate relied on the unpublished Sixth Circuit opinion *Miracle v. Commissioner of Social Security Admin.*, 43 Fed.Appx. 895, 896–97 (6th Cir.2002), which held that the ALJ did not need to reference the claimant's anxiety disorder in his hypothetical question, because the record did not reflect that the claimant actually had such a disorder. Of particular importance to the Sixth Circuit was the fact that neither the claimant nor his representative mentioned a severe anxiety disorder or treatment for this disorder at the administrative hearing. *Id.*

Here, the Court finds *Miracle* inapplicable, not only because it is an unpublished opinion, but because it can be distinguished from the facts at hand. That is, in this case, unlike *Miracle,* not only did the ALJ specifically discuss Plaintiff's mental condition at the administrative hearing, but she also made an explicit finding in her Opinion that Plaintiff had "an adjustment disorder with depressed mood." As such, the Court finds that in accordance with the rule of law stated in *Howard,* the ALJ should have referenced Plaintiff's mental condition in her hypothetical question to the VE. Contrary to the magistrate's holding, the ALJ's failure to do so was not merely "harmless error." Rather, as in *Howard,* the ALJ's oversight calls into question the reliability of the VE's testimony that the claimant could perform "other work." As such, the Court finds it neces-

sary to remand to the ALJ for further fact finding on this issue.

## V. CONCLUSION

For the reasons stated above, the Court REMANDS to the ALJ for rehearing.

IT IS SO ORDERED.